## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

GARNARD W. BURNSIDE )
4065 Heritage Crossing Walk SW )
Powder Springs, Georgia 30127 )
          )
          *Plaintiff*, )
          )
     v. )      Civil Action No.
          )
UNITED STATES, )
          )
          *Defendant*. )

### COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF
### (Collateral Review of Court-Martial Conviction)

### INTRODUCTION

This is an action for collateral review of an unconstitutional conviction by a general court-martial. The case raises one issue under the Due Process Clause of the Fifth Amendment: whether the military courts erred in holding that there was no reasonable possibility that the military judge's admission of Plaintiff's post-invocation statements to certain military law enforcement agents contributed to the conviction for assault consummated by a battery.

### JURISDICTION

1.     The Court has jurisdiction under 28 U.S.C. § 1331. The federal question arises under the Due Process Clause of the Fifth Amendment and 10 U.S.C. § 831(a).

### VENUE

2.     Venue is proper in this district. 28 U.S.C. §1391(e).

### PARTIES

3.     Plaintiff was a Specialist in the United States Army. His pay grade was E-4. He resides at the address in the caption.

4.     Defendant is the United States and the opposing party in Plaintiff's court-martial, captioned *United States v. Specialist Garnard W. Burnside*.

**FACTS**

A.     Plaintiff's Invocation of Rights and Military Law Enforcement's Failure to Scrupulously Honor the Invocation

5.     On August 22, 2012, Plaintiff's wife, NB, contacted military police [MP] in Heidelberg, Germany, and alleged that Plaintiff had assaulted her.  She did not allege a sexual assault.

6.      On August 23, 2012, at 9:00 am, Plaintiff was taken to the MPI office by a member of his chain of command.

7.     Investigator [INV] RJ informed Plaintiff that he was suspected of committing an assault.  He advised Plaintiff of his rights to silence and counsel.

8.      Plaintiff reviewed the DA Form 3881, Rights Warning Procedure/Waiver Certificate.  He waived his rights to silence and counsel.  He stated that he would speak with INV RJ but would not write any statements.

9.      According to INV RJ, "He then waived his rights, saying that he wanted to talk to me.  And then from that point on we went ahead and talked about the incident."  Plaintiff stated that he made sexual advances toward NB toward the end of the physical altercation.  NB said "no" multiple times, but then said, "do whatever you want with me."  Plaintiff told INV RJ that he and NB engaged in sexual activity.

10.     Based on Plaintiff's account of the sexual activity, INV RJ suspected Plaintiff of also committing rape.

11.     INV RJ contacted Special Agent [SA] PS of the Criminal Investigation Command [CID], a separate military law enforcement agency, because rape offenses fell within CID's

2

purview.

12.      Because INV RJ had developed a rapport with Plaintiff during the interview, SA PS instructed INV RJ to advise Plaintiff of his rights to silence and counsel for the offense of rape with a new DA Form 3881 and to continue interviewing Plaintiff.

13.      Pursuant to SA PS's instructions, INV RJ re-advised Plaintiff of his rights to silence and counsel for the offense of rape.

14.      At 11:47 am on August 23, 2012, Plaintiff checked the block on DA Form 3881 next to the words, "I do not want to be questioned or say anything."

15.      INV RJ informed SA PS by phone that Plaintiff had invoked his rights to silence and counsel.  SA PS informed INV RJ that he was en route to the MPI office.

16.      Upon SA PS's arrival at the MPI office, INV RJ again informed him that Plaintiff had invoked his rights.

17.      INV RJ and another MP investigator drove Plaintiff to the Kaiserslautern CID office.  Plaintiff was transferred into CID custody.

18.      After approximately three hours of "administrative processing," SA PS led Plaintiff to an interrogation room.  SA PS produced another DA Form 3881, advised Plaintiff that he was suspected of rape, and told him that the second DA Form 3881 from MPI "didn't count."

19.      Plaintiff did not understand why he needed to sign a third DA Form 3881 because he had already invoked his right to silence regarding the rape allegation.

20.      At 3:45 pm, Plaintiff waived his rights to silence and counsel and gave an oral statement in which he incriminated himself for the offenses of rape and assault consummated by a battery.

21.      SA PS questioned Plaintiff for approximately five to six hours.  Throughout the

interview, SA PS repeatedly asked Plaintiff to make a written sworn statement, but Plaintiff consistently refused. SA PS ended the interview and prepared to release Plaintiff to his unit.

22.    Plaintiff was led to the fingerprinting area where SA PS fingerprinted him again, collected a second DNA sample, and returned his personal possessions.

23.    SA RW entered the fingerprinting area and introduced himself to Plaintiff as a "special victims unit guy." Plaintiff asked if he was the Family Advocacy Program representative with whom he was supposed to meet. SA RW nodded his head but never disclosed that he was a CID agent.

24.    SA RW said he needed to get Plaintiff's statement. Plaintiff explained that he had been at CID all day and asked if they could meet the following day.

25.    SA RW insisted that Plaintiff give a statement and told him that if Plaintiff ever wanted to be a non-commissioned officer [NCO], then providing a written statement would demonstrate leadership. Plaintiff again declined to write a written statement.

26.    SA RW insisted that Plaintiff write a statement because the case would go before a panel,[1] that no one on the panel was African American like Plaintiff, and that the panel would not understand Plaintiff's side of the story. SA RW told Plaintiff that if Plaintiff wanted to be an NCO, then he needed to do the right thing and that if Plaintiff did not write a statement he "wouldn't be doing the right thing."

27.    SA RW stated that Plaintiff needed to come back into the interrogation room with him to speak since he was unwilling to write a statement. At some point, Plaintiff said, "I think I need a lawyer." SA RW told Plaintiff that it was a decision only Plaintiff could make.

---

[1] Rule for Courts-Martial [R.C.M.] 502(a) provides that the members of a court-martial shall determine whether the accused is found guilty. The members are collectively known as the "panel."

28.    At 10:30 pm on August 23, 2012, CID agents informed Plaintiff's unit that he was ready to be picked up.  Sergeant ED arrived at the CID office at 11:00 pm to escort Plaintiff.  CID officials told Sergeant ED that they were still trying to finish some things and that it would be just a little bit longer.

29.    Shortly thereafter, Sergeant ED heard Plaintiff speaking with CID officials.  He heard these officials tell Plaintiff that it "would only help him if he would tell them what happened."  He also heard Plaintiff say he "did not want to, that he told them everything he wanted to . . . . [h]e was tired" and "just done."  Sergeant ED believed that the agents pressured Plaintiff into writing a statement because Plaintiff "had to say repeatedly that he really didn't seem to want to say anymore."  It seemed  that "he did not wish to speak with them any further and that they were trying to pressure him into going ahead and talking further."

30.    CID officials told Sergeant ED to leave because Plaintiff had changed his mind, and that CID would call him when Plaintiff was ready to leave.

31.    Between 11:00 pm on August 23, 2012, and 5:09 am the following day, Plaintiff provided SA RW with a written statement.

32.    Plaintiff signed the statement at 5:09 am on August 24, 2012.

B.    Plaintiff's Court-Martial

33.    The government charged Plaintiff with committing rape and assault consummated by a battery upon his wife on August 22, 2012.  Relevant to this cause of action, the government accused Plaintiff of unlawfully twisting the wrist of NB, on or about August 21, 2012, at or near Leimen, Germany, in violation of Article 128, Uniform Code of Military Justice [UCMJ], 10 U.S.C. § 928 (2012).

34.    The defense moved to suppress Plaintiff's oral and written statements to SA PS and

SA RW.

35.    The government did not call any witnesses or introduce any documentary evidence to oppose the motion.  Instead, the government rested on its response to the motion, which included the summarized transcripts of SA PS's and SA RW's testimony at the Article 32, UCMJ, 10 U.S.C. § 832, hearing.[2]

36.    Regarding the allegation of assault consummated by a battery, SA PS testified at the Article 32 hearing, [W]e discussed in chronological order the sequence of events, and upon the conclusion of that, I asked for a written statement and [Specialist] Burnside declined. . . ."

37.    SA RW testified at the Article 32 hearing that he introduced himself to Plaintiff as being assigned to "the Kaiserslautern office for the Special Victims Unit."  He testified about the chronology of his time with Plaintiff, but did not testify about the substance of Plaintiff's oral and written statements.

38.    The military judge denied the motion to suppress Plaintiff's oral and written statements to SA PS and SA RW.  He concluded that Plaintiff's right to remain silent was not violated when CID re-advised Plaintiff of his rights four hours after he invoked his right to silence with the MPI investigators.  He also found that Plaintiff's subsequent statements were voluntary.

39.    At trial, the military judge admitted Plaintiff's written statement as Prosecution Exhibit 5.  In that statement, Plaintiff discussed the "verbal/physical altercation" between him and

---

[2] An Article 32, UCMJ, hearing, is a preliminary hearing required before a general court-martial convening authority can refer a charge or specification to trial.  The hearing shall be a "thorough and impartial investigation of all the matters set forth therein" and "shall include inquiry as to the truth of the matter set forth in the charges, consideration of the form of charges, and a recommendation as to the disposition which should be made of the case in the interest of justice and discipline." Article 32(a), UCMJ, 10 U.S.C. § 832(a). An accused, which is the military justice system's term for a defendant, shall be advised of the charges against him and of his right to be represented by counsel at that hearing.  *Id*. at (b).  The accused may cross-examine witnesses if they are available and may present evidence in defense or mitigation.  *Id*.

NB and that he grabbed and twisted her wrist.

40.    The prosecutor, knowns as a trial counsel in the military justice system, discussed the alleged assault in his opening statement when he told the panel that Plaintiff had "yank[ed] at NB's arm. He described a violent confrontation between Plaintiff and NB and twice informed the panel that they could rely on Plaintiff's own words in the written sworn statement to SA RW that he "wrenched" NB's arm behind her back.

41.    During the government's case-in-chief, the prosecutor addressed Plaintiff's admissions in his direct examination of the CID agent who interviewed NB; in his direct examination of SA PS, who testified at length about Plaintiff's oral statements; and in his direct examination of SA RW, who also testified extensively about Plaintiff's admissions.

42.    In his closing argument, the prosecutor told the panel, "You heard that the accused twisted his wife's arm around and up her back causing her pain."

43.    In his rebuttal argument, the prosecutor told the panel, "He admitted in his sworn statement that he wrenched her arm behind her back. . . ." He argued, "[t]his is a case about an Army family member, the wife of a Soldier, a wife who was physically assaulted and raped by her husband."

44.    A general court-martial composed of officer and enlisted members[3] at Kaiserslautern, Germany, convicted Plaintiff of rape (three specifications) and assault consummated by a battery (one specification), in violation of Articles 120 and 128 of the UCMJ, 10 U.S.C. §§ 920 and 928 (2012).

---

[3] R.C.M. 502(b) mandates that the president of a court-martial panel shall be the highest-ranking member of the panel. The president has the same duties as the other members and shall also preside over closed sessions of the members during their deliberations and shall speak for the members when announcing the verdict or requesting instructions from the military judge.

45.    The panel sentenced Plaintiff to reduction to the lowest enlisted grade, forfeiture of all pay and allowances, confinement for two years, and a dishonorable discharge.

C.    Decisions by the United States Army Court of Criminal Appeals and the United States Court of Appeals for the Armed Forces.

46.    Plaintiff appealed his conviction and sentence to the United States Army Court of Criminal Appeals [ACCA].  Plaintiff raised three issues to the ACCA:  (a) the military judge abused his discretion when he denied the defense motion to suppress the sworn statement taken in violation of the Fifth Amendment and Article 31, UCMJ, 10 U.S.C. § 831, because SA PS and SA RW failed to scrupulously honor Plaintiff's invocation of the right to remain silent; (b) the military judge abused his discretion when he admitted Plaintiff's involuntary oral and written confessions to SA PS and SA RW because they were the product of coercion, unlawful influence, and unlawful inducement; and (c) the evidence was legally and factually insufficient to support the findings of guilty for rape.

47.    The ACCA held that the military judge abused his discretion when he denied the motion to suppress Plaintiff's oral and written statements to CID agents, who failed to scrupulously honor the invocation of the constitutional right to silence and obtained involuntary statements from him.  *United States v. Burnside*, 74 M.J. 783, 785 (Army Ct. Crim. App. 2015).

48.    The ACCA faulted the military judge for failing to address "two decisive matters: appellant's unambiguous invocation of his right to remain silent and [Sergeant] ED's testimony." The ACCA concluded that Plaintiff unambiguously invoked his right to remain silent and that the military judge could not make reliable conclusions of law without evaluating Sergeant ED's testimony.  *Id*. at 790.

49.    The ACCA concluded that CID failed to scrupulously honor Plaintiff's right to remain silent; indeed, the agents "did nothing but dishonor or invalidate the previous invocation,"

such that Plaintiff's "subsequent waiver of that right was involuntary" under *Miranda v. Arizona*, 384 U.S. 436 (1966). *Id*. at 791. *See also Michigan v. Mosley*, 423 U.S. 96, 104 (1975) ("the admissibility of statements obtained after the person in custody has decided to remain silent depends under *Miranda* on whether his right to cut off questioning was scrupulously honored.") (internal quotation marks omitted); *United States v. Watkins*, 34 M.J. 344 (C.M.A. 1992) ("Whether there is a violation of *Miranda* by approaching an individual after invoking his rights depends on which right was invoked, who initiates communication, the subject matter of the communication, when the communication takes place, where the communication takes place, and the time between invocation of the right and the second interview.").

50.     The ACCA explained that the record established that SA PS instructed INV RJ to re-advise Plaintiff and continue interviewing him for the rape allegation. If Plaintiff "had waived his rights and spoken to INV RJ about the rape allegation, CID would have honored that decision. However, CID refused to honor appellant's decision to invoke. Army law enforcement authorities cannot have it both ways." *Id*. at 791-92.

51.     The ACCA's reasoning regarding the constitutional violation surrounding Plaintiff's oral statements to SA PS applied "equally" to the written statement that SA RW obtained: SA RW "did not scrupulously honor appellant's constitutional right to remain silent under *Mosley*." *Id*. at 792.

52.     Regarding prejudice, the court concluded that, with respect to the convictions for rape, the error was not harmless beyond a reasonable doubt. The ACCA stated there is a reasonable possibility that Plaintiff's statements to SA PS and SA RW "contributed to appellant's convictions of the three specifications of rape where – in its opening statement, case-in-chief, closing and rebuttal arguments – the government prominently emphasized statements obtained in violation of

the Fifth Amendment and where the panel's findings were remarkably consistent with admissions in those statement." *Id*.

53.     Regarding the conviction for assault consummated by a battery for grabbing NB's wrist, however, the court concluded that the military judge's error was harmless beyond a reasonable doubt because Plaintiff's admissions to SA PS and SA RW "were cumulative with [his] properly admitted statement to INV RJ." *Id*.

54.     The ACCA set aside the findings of guilty for the three rape offenses, affirmed the finding of guilty for assault consummated by a battery, set aside the sentence, and ordered a rehearing. *Id*.

D.    Sentence Rehearing

55.     On November 13, 2025, the general court-martial convening authority [GCMCA] dismissed the three specifications alleging rape without prejudice and referred the specification alleging assault consummated by a battery to a sentence rehearing only.

56.     On February 11, 2016, at Fort Sill, Oklahoma, a military judge sitting as a general court-martial, sentenced Plaintiff to reduction to the lowest enlisted grade and a reprimand.  The court-martial credited Plaintiff with 548 days of pretrial confinement credit for time served following the 2013 conviction.

E.    Subsequent Appeals

57.     Plaintiff submitted his case to the ACCA on the merits.  The ACCA summarily affirmed the findings and sentence from the rehearing in a Decision on Further Review.  *United States v. Burnside*, ARMY 20130193 (Army Ct. Crim. App. Sept. 20, 2016) (unpub.).

58.     Plaintiff petitioned the United States Court of Appeals for the Armed Forces [CAAF], the highest court in the military justice system, for review of two issues:  (a) whether the

10

Army Court erred in finding that there was no reasonable probability that the erroneous admission of Plaintiff's statements to CID agents contributed to his conviction for assault consummated by a battery and (b) whether the military judge abused his discretion when he admitted Plaintiff's involuntary oral and written statements regarding the alleged assault consummated by a battery to the CID agents because these statements were the product of coercion, unlawful influence, and unlawful inducement.

59.    The CAAF denied review.  *United States v. Burnside*, 76 M.J. 125, 2017 CAAF LEXIS 107 (C.A.A.F. Feb. 10, 2017) order denying review.

60.    Under the law in effect at the time of Plaintiff's petition  to the CAAF, the Supreme Court lacked jurisdiction to review any case, such as Plaintiff's, in which the CAAF denied a petition for review.  10 U.S.C. § 867a(a).

61.     Plaintiff was honorably discharged from the Army on April 4, 2016.

62.    On March 6, 2020, the CAAF dismissed Plaintiff's pro se petition for extraordinary relief in the nature of a writ of error coram nobis.  *Burnside v. United States*, 80 M.J. 82, 2020 CAAF LEXIS 134 (C.A.A.F. Mar. 6, 2020) (order denying review).

## CAUSE OF ACTION

**Count I – The military courts erred in concluding that the military judge's erroneous admission of Plaintiff's post-invocation statements to the CID agents regarding the alleged assault consummated by a battery were harmless beyond a reasonable doubt.**

63.    The averments of ¶¶ 1-62 are incorporated herein by reference.

64.    The Fifth Amendment Due Process applies to courts-martial.

65.    Where there is constitutional error, the military courts will assess whether the error was harmless beyond a reasonable doubt. *United States v. Mott*, 72 M.J. 319, 332 (C.A.A.F. 2012)

(citing *United States v. Paige*, 67 M.J. 442, 449 (C.A.A.F. 2009)).

66.    A constitutional error is "not harmless beyond a reasonable doubt if 'there is a reasonable possibility that the evidence complained of might have contributed to the conclusion.'" *Id*. at 332 (quoting *United States v. Moran*, 65 M.J. 178, 187 (C.A.A.F. 2007) (quoting *Chapman v. California*, 386 U.S. 18, 24 (1967)).

67.    "To say that an error did not 'contribute' to the ensuing verdict is not, of course, to say that the jury was totally unaware of that feature of the trial later held to have been erroneous. . . . To say that an error did not contribute to the verdict is, rather, to find that error unimportant in relation to everything else the jury considered on the issue in question, as revealed in the record. *Yates v. Evatt*, 500 U.S. 391, 403(1991), *overruled on other grounds by Estelle v. McGuire*, 502 U.S. 62, 72 n.4; *accord Paige*, 67 M.J. at 451.

68.    Erroneous admission of a confession "requires a reviewing court to exercise extreme caution before determining that the admission of the confession at trial was harmless." *Arizona v. Fulminante*, 499 U.S. 279, 296 (1991).

69.    After waiving his rights to silence and counsel, Plaintiff made an oral statement to INV RJ.  The particulars of this oral statement are unknown because INV RJ only testified that he and Plaintiff "went ahead and talked about the incident."

70.    Based on one sentence of INV RJ's roughly nineteen-page testimony during the motion to suppress, the ACCA deduced that Plaintiff had admitted to grabbing and twisting NB's wrist even though INV RJ did not testify about what Plaintiff told him.

71.    Because INV RJ did not testify about what Plaintiff told him regarding the alleged assault consummated by a battery, Plaintiff's post-invocation admissions to the CID agents on this point were cumulative with nothing.  Accordingly, the ACCA erred in concluding that Plaintiff's

post-invocation statements to the agents were cumulative.

72.     There is a reasonable probability that the military judge's erroneous admission of Plaintiff's post-invocation statements to the CID agents regarding the alleged assault consummated by a battery might have contributed to Plaintiff's conviction.

73.     The ACCA concluded that the government "prominently emphasized statements obtained in violation of the Fifth Amendment and where the panel's findings were remarkably consistent with admissions in those statements" regarding the rape offenses, such that the military judge's error was not harmless beyond a reasonable doubt for these offenses. *Burnside*, 74 M.J. at 792.

74.     In its opening statement, the case-in-chief, and the closing argument, the government also prominently emphasized Plaintiff's statements regarding the alleged assault consummated by a battery – also obtained in violation of the Fifth Amendment – and Plaintiff was convicted of that offense.  Accordingly, just as there was a reasonable possibility that the erroneous admission of Plaintiff's post-invocation statements to the CID agents might have contributed to the convictions for rape, there was a reasonable possibility that the erroneous admission of Plaintiff's post-invocation statements to the CID agents might have contributed to the conviction for assault consummated by a battery.

75.     Because the ACCA erroneously held that the military judge's error was harmless beyond a reasonable doubt and the CAAF erred in denying review of this issue, Plaintiff's conviction and sentence violated the Fifth Amendment and are invalid.

## **RELIEF REQUESTED**

76.     Plaintiff prays that the Court enter judgment –

(a) declaring that his conviction and sentence were obtained in violation of the Fifth

Amendment;

      (b) ordering that his conviction and sentence be expunged and that all rights, property, and

privileges of which he has been denied by reason of the conviction be restored; and

      (c) granting such other and further relief as may in the circumstances be just and proper.

<div style="margin-left: 50%;">

Respectfully submitted,

/s/ *William E. Cassara*
WILLIAM E. CASSARA
D.C. Bar No. GA0034
William E. Cassara, PC
PO Box 2688
Evans, GA 30809
(706) 860-5769
bill@courtmartial.com

Attorney for Plaintiff

</div>

February 12, 2025

Serve:        Attorney General of the United States
                United States Attorney for the District of Columbia